**STATE of Vermont v. Judy GRAVES**

[757 A.2d 462]

No. 99-194

April 26, 2000. Defendant Judy Graves appeals the denial of her motion to sup-

press. She drove into a port of entry between Canada and the United States where a Vermont State Police officer observed signs of intoxication. He then conducted field sobriety tests and arrested her. She argued in her motion to suppress and argues on appeal that warrantless arrests by state officers are prohibited in the federal enclave. We affirm.

Defendant stopped at the port of entry in Derby, Vermont, returning from Canada to the United States. While stopped, a Vermont officer observed that her eyes were watery and bloodshot, and that she smelled of alcohol. When questioned, she said she had three drinks, and that her last drink had been about a half-hour earlier. The officer asked her to perform field sobriety tests. As a result of her performance, the officer believed that she had been operating a motor vehicle on a public highway under the influence of alcohol. He therefore arrested her and administered a breath test, the results of which showed a blood-alcohol content of .154% approximately one hour after operation.

Defendant moved to suppress the results of the breath test, arguing that the arrest was extrajurisdictional. She contends that although federal and state statutes provide concurrent jurisdiction for crimes committed within a federal enclave, the Vermont statute permitting service of criminal or civil process does not permit warrantless arrests in a federal enclave. See 1 V.S.A. § 551. The trial court denied her motion to suppress, citing our decision in *State v. Armstrong,* 148 Vt. 344, 533 A.2d 1183 (1987), and defendant appeals this denial. Our review is de novo. See *State v. Madison,* 163 Vt. 360, 371, 658 A.2d 536, 543 (1995) (questions of law reviewed de novo).

State jurisdiction over crimes committed in areas ceded to the federal government is granted by 8 U.S.C. § 1358, which provides:

> The officers in charge of the various immigrant stations shall

admit therein the proper State and local officers charged with the enforcement of the laws of the State or Territory of the United States in which any such immigrant station is located in order that such State and local officers may preserve the peace and *make arrests* for crimes under the laws of the States and Territories. For the purpose of this section the jurisdiction of such State and local officers and of the State and local courts shall extend over such immigrant stations.

(Emphasis added.) Vermont enacted a related statute, providing that, when the federal government has exercised its power to purchase state lands for necessary federal buildings or enclaves, "concurrent jurisdiction is reserved for the execution upon such lands of all process, civil or criminal, issued by the courts of the state and not incompatible with the cession." 1 V.S.A. § 551.

We have previously indicated that Vermont has jurisdiction over crimes committed in the federal enclaves of ports of entry. See *Armstrong*, 148 Vt. at 346, 533 A.2d at 1185 (noting that 8 U.S.C. § 1358 expressly provides for concurrent jurisdiction and that "courts have regularly upheld state court jurisdiction over similar offenses arising out of stops or arrests at border stations."). Indeed, defendant has not challenged the officer's authority to arrest, only the procedure of warrantless arrests. Defendant reads § 551 to mean that law enforcement officers may act in the federal enclave only with the prior authorization of a court. *Armstrong*'s observation does not answer defendant's argument. The question of authority to make warrantless arrests within the federal enclave was raised in *State v. Vanhouten*, 165 Vt. 572, 679 A.2d 900 (1996) (mem.), but not reached due to our remand for further factual findings.

See *id.* at 573, 679 A.2d at 901. Thus, to date, we have not directly addressed this argument.

Section 551 uses inclusive language to make clear the broad scope of the State's concurrent jurisdiction. Under the statute, Vermont retains jurisdiction for "all process, civil or criminal." 1 V.S.A. § 551. The fact that the statute denotes process "issued by the courts of the state" does not mean that a court order must authorize anything done inside the federal enclave. Rather, it means that the exercise of law-enforcement authority must be governed by the procedures established by the Vermont courts.

Here, in order to determine the process required under the rules of the courts of Vermont, we must look to the rules of criminal procedure, which provide a variety of procedures for arrests. Those rules are created by this Court. See V.R.Cr.P. Foreword ("The Vermont Rules of Criminal Procedure were promulgated by the Supreme Court on January 31, 1973."). Rule 3 provides: "A law enforcement officer may arrest without warrant a person whom the officer has probable cause to believe has committed a crime in the presence of the officer." V.R.Cr.P. 3(a). It is uncontested that the officer had probable cause to believe defendant was operating her car under the influence of alcohol. He had observed her red, watery eyes and slurred speech. Her performance of the field sobriety tests further attested to her impairment. Finally, he had seen her in actual physical control of a motor vehicle. Therefore, he needed no warrant to make the arrest under Rule 3. Defendant received the appropriate process, as governed by the Vermont Rules of Criminal Procedure.

We have found only one case that presented the issue of arrests within a federal enclave pursuant to a state statute referencing process issued by the courts. In *State v. Allard*, 313 A.2d 439 (Me. 1973), the court dealt with a Maine stat-

ute that contained language similar to our § 551. The statute provided that Maine retained a concurrent jurisdiction "'so far as that civil process . . . and such criminal or other process as shall issue under the authority of the state of Maine against any person . . . charged with crimes or misdemeanors . . . may be executed [in the enclave].'" *Id.* at 447 (quoting R.S. 1930, ch. 2, § 11). The court determined that "[t]he statute on its face seeks to retain state authority to execute criminal process . . . *inside* the ceded area," *id.*, and therefore concluded that the state intended to reserve jurisdiction "to arrest and prosecute for crimes under state law committed [on the ceded land]." *Id.* at 449. As the court noted, such reservation of jurisdiction is sometimes deemed necessary to prevent federal lands from becoming a haven for criminals. *Id.* at 446.

While we have not found any other cases presenting exactly this claim, we find support for a broad definition of "process" in a number of cases considering the term "process" in a variety of contexts. See, e.g., *Adams v. Superior Court*, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992) ("Process is action taken pursuant to judicial authority."); *Kirchner v. Greene*, 691 N.E.2d 107, 117 (Ill. App. Ct. 1998) ("'Process' is defined 'as any means used *by the court* to acquire or exercise jurisdiction over a person or over specific property.'"); *State v. Joos*, 735 S.W.2d 776, 779 (Mo. Ct. App. 1987) ("'process' is used as a general term and denotes the means whereby a court compels a compliance with its demands"). But see *Bruett v. 18328 11th Ave. N.E.*, 968 P.2d 913, 918 (Wash. Ct. App. 1998) ("'Process' is interpreted to be a judicial writ.").

In interpreting a statute, "we must look not only at the letter of [the] statute but also its reason and spirit." *In re S.B.L.*, 150 Vt. 294, 301, 553 A.2d 1078, 1083 (1988). Further, we must avoid results that are irrational or unreasonable. See *id.* We therefore cannot agree with

defendant that, without an arrest warrant, a Vermont officer in a federal enclave may do nothing when a crime is committed in the officer's presence. Defendant does not contest the officer's authority to arrest her; she challenges only the procedure of effecting the arrest. Where, as here, the authority is clearly provided, there must be some way to effectuate that authority, to save the statute from leading to an irrational result.

*Affirmed.*