State of Vermont v. Patricia M. Garbutt
State of Vermont v. James W. Waite
State of Vermont v. Michael R. Demarchena

[790 A.2d 444]

Nos. 00-556, 01-061 & 01-092

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 28, 2001

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Nicholas L. Hadden*, St. Albans, for Defendants-Appellants.

**Dooley, J.** Defendants Patricia M. Garbutt, James W. Waite and Michael R. Demarchena filed separate appeals from denials of

motions to suppress evidence which was obtained by Vermont state police officers while defendants were detained at United States border stations. We consolidated the appeals because they present similar questions of law. On appeal, defendants argue that the suppression motions should have been granted because: (1) the Vermont state police did not have jurisdiction to enter the border stations and arrest defendants without a warrant, (2) we should overrule our decision in State v. Armstrong, 148 Vt. 344, 533 A.2d 1183 (1987), where we held that state courts retain jurisdiction over offenses committed at United States border stations, and (3) defendants were subjected to custodial interrogation without the benefit of Miranda warnings. We affirm.

The relevant facts are not in dispute and are the same in the three cases. In each case defendants attempted to enter the United States from Canada by automobile at a U.S. border station located in Vermont. Each defendant had driven on a Vermont state road from the Canadian border station to the U.S. border station. U.S. customs inspectors asked defendants the usual screening questions, and each defendant exhibited physical signs of being intoxicated, including slurred speech, watery eyes and the smell of alcohol, which gave the border patrol reason to believe defendants had been operating their cars on a state road under the influence of intoxicating liquor. Accordingly, each defendant was detained for secondary inspection inside the border patrol station, where they were free to walk around, make telephone calls, and leave the building to smoke cigarettes.

In each case, a border patrol officer then called the state police and notified them that they had reason to believe that defendants had been driving in Vermont while under the influence of alcohol. The police officers came to the border stations immediately after being called, taking from twenty-five minutes to seventy-five minutes to arrive. In each case, while still in the border station, a state police officer questioned defendant and asked each to perform sobriety tests, without first giving defendant Miranda warnings. In each case, the information the officer obtained from defendant, coupled with the information received from the customs inspector, gave the officer probable cause to arrest defendant for operating a motor vehicle while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a). The police officers arrested defendants without a warrant and took defendants to the police station, where the officers

advised defendants of their rights in compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966).

In each case, defendant filed a motion to suppress, seeking to exclude evidence obtained as a result of the "unlawful seizure" at the border station. As noted below, however, the grounds for the motions differed. In each case, the trial court denied the motion to suppress.

Defendants raise three reasons why we should reverse the district courts' decisions and grant their motions to suppress. First, they argue that the Vermont state police did not have jurisdiction to enter the federal enclaves in which the border stations lie and to arrest defendants without a warrant. Second, they argue that the state does not have jurisdiction over offenses committed at border stations and that we should overrule our decision in *State v. Armstrong*, 148 Vt. 344, 533 A.2d 1183 (1987), where we decided that the state does have such jurisdiction. Finally, defendants argue that they should have been given *Miranda* warnings before the police officers questioned them or asked them to perform field sobriety tests. We review motions to suppress de novo. *State v. Graves*, 170 Vt. 646, 646, 757 A.2d 462, 463 (2000) (mem.).

Defendants first argue that the state police did not have jurisdiction to enter the border inspection stations and arrest them without a warrant. The border inspection stations are federal enclaves created when Vermont ceded land to the federal government for the use of the Department of Customs. Under article I, section 8, clause 17 of the federal constitution, the federal government retains exclusive jurisdiction over the enclaves unless Congress specifically reserves jurisdiction to the states. *Paul v. United States*, 371 U.S. 245, 263 (1963). Congress has provided for state jurisdiction to arrest and prosecute persons for violation of state law when those persons are within a border inspection station by enacting 8 U.S.C. § 1358, which provides:

> The officers in charge of the various immigrant stations shall admit therein the proper State and local officers charged with the enforcement of the laws of the State or Territory of the United States in which any such immigrant station is located in order that such State and local officers may preserve the peace and make arrests for crimes under the laws of the States and Territories. For the purpose of this section the jurisdiction of such State and local officers and of

the State and local courts shall extend over such immigrant stations.

8 U.S.C. § 1358.

Vermont has enacted a related statute, 1 V.S.A. § 551, which retains jurisdiction for Vermont over lands sold or ceded by the state to the federal government for the uses set out in article I, section 8, clause 17 of the federal constitution. At the time defendants were arrested, 1 V.S.A. § 551 provided in relevant part:

[C]oncurrent jurisdiction is reserved for the execution upon such lands of all process, civil or criminal, issued by the courts of the state and not incompatible with the cession.

1 V.S.A. § 551 (1999), amended by 1999, No. 160 (Adj. Sess.), § 1 (Supp. 2000). In 2000, the Legislature amended the statute to read as follows:

[C]oncurrent jurisdiction is reserved for the execution upon such lands of all process, civil or criminal, issued by the courts of the state and not incompatible with the cession, and for the enforcement of state law in the federal enclave along the border of Canada and Vermont by [certified] law enforcement officers . . . .

1 V.S.A. § 551 (2001). The revised statute went into effect on May 29, 2000.

Defendants concede that under the revised statute, which merely codifies our holdings, the state now has the power to make warrantless arrests in border stations. The crux of defendants' argument, however, is that before the amended statute went into effect, the state had not reserved the power to make warrantless arrests because the Legislature had required process "issued by the courts of the state." 1 V.S.A. § 551.

We recently decided this question adversely to defendants in *State v. Graves*, 170 Vt. at 647-48, 757 A.2d at 464. In reaching our decision that police could make warrantless arrests within the federal enclave, we noted that § 551 "uses inclusive language to make clear the broad scope of the State's concurrent jurisdiction," *id.* at 647, 757 A.2d at 463, and construed the section to "mean[] that the exercise of law-enforcement authority must be governed by the procedures established by the Vermont courts." *Id.*

In *Graves*, the state officer was at the border station when defendant drove in, and thereafter the officer developed probable

cause to believe that defendant committed the crime of DUI in his presence. Since the power to arrest in such circumstances is created by V.R.Cr.P. 3(a), a Court rule, and the officer acted pursuant to the rule, we held that the warrantless arrest was authorized by § 551. *Id.* at 647-48, 757 A.2d at 464.

In these cases, the state police officers did not observe defendants' operation of their vehicles. This is, however, a distinction from *Graves* without a difference. V.R.Cr.P. 3(a)(5) authorizes a law enforcement officer to arrest a person without a warrant "when the officer has probable cause to believe a person has committed or is committing a violation of . . . 23 V.S.A. § 1201," Vermont's DUI statute. It is uncontested that the state police officers, based on their own observations and information from the federal officers, had probable cause to believe defendants were operating their vehicles under the influence of alcohol. Therefore, the officers acted pursuant to Criminal Rule 3(a)(5) and had the judicial authorization required by § 551. The trial courts properly found that the state police officers were authorized to arrest defendants without warrants.

Second, defendants argue that the state does not have jurisdiction to prosecute these offenses because they occurred at the border inspection stations, which are federal enclaves. Defendants acknowledge that we decided this issue against their position in *State v. Armstrong*, but urge us to overrule *Armstrong*.

Whatever the merits of defendants' arguments, we do not reach them. In one of the cases, *State v. James Waite*, defendant failed to raise the issue below so it is not before us. In the other two cases, the respective district courts found that after entering the United States the defendant crossed a strip of land in Vermont before reaching the federal enclave. Defendants have not challenged these findings. Thus, on the records before us, the findings support the courts' conclusions that these two defendants committed DUI in Vermont outside the federal enclave. See *State v. Dreibelbis*, 147 Vt. 98, 99, 511 A.2d 307, 307-08 (1986) (defendant could be charged with a state drug possession offense where he left Canada, transported the drugs across a strip of state land, and then presented himself for inspection at a U.S. inspection station). Even if DUI in the federal enclave is not a Vermont crime, defendants would not be helped by such a ruling.

Finally, we turn to defendants' *Miranda* argument. Defendants argue that the trial court erred in refusing to suppress statements they made and the results of field sobriety tests because they were obtained without the police first advising defendants of their *Miranda* rights. The trial courts denied the suppression motions because they found that defendants were not in "custody."

In the *Miranda* decision, the Supreme Court was particularly concerned with "incommunicado interrogation of individuals in a police-dominated atmosphere." *Miranda v. Arizona*, 384 U.S. at 445. The Court held that before police subject criminal suspects to custodial interrogation, they must be advised of their rights to remain silent and to have an attorney present during questioning. *Id.* at 457-58. "By custodial interrogation," the Court explained, "we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. Suspects not in custody are not entitled to *Miranda* warnings. See *State v. Willis*, 145 Vt. 459, 472-73, 494 A.2d 108, 115-16 (1985) (applying objective test of custody).

Despite the broad language of *Miranda*, the Court held that warnings are not required in most traffic stops because such stops did not involve restraint comparable to a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); see also *State v. Boardman*, 148 Vt. 229, 231, 531 A.2d 599, 601 (1987) (roadside interrogation during routine traffic stop does not require *Miranda* warnings). *Berkemer* states that *Miranda* warnings are not required for *Terry* stops generally. *Berkemer*, 468 U.S. at 439-40. Following *Berkemer*, we have expressed the *Miranda* custody element as "an objective inquiry into the totality of the circumstances to determine if a reasonable person would believe he or she were free to leave or to refuse to answer police questioning." *Willis*, 145 Vt. at 475, 494 A.2d at 117. The subjective beliefs of the police and the suspect are irrelevant to this inquiry. *Stansbury v. California*, 511 U.S. 318, 324 (1994) (custody determination based on objective circumstances of the interrogation, not subjective views of suspect or interrogating officers). Nevertheless, the subjective views of an officer may be relevant if they are communicated to the suspect because such knowledge could make a reasonable person believe she is not free to leave. See *id.* at 325.

■ It is possible to be detained by the police and not be free to go, but still not be in custody for *Miranda* purposes. See *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). For instance, nearly all of the decisions from state and federal courts have applied an objective test of custody, like the one we applied in *Boardman*, and held that brief border stops do not require *Miranda* warnings generally. See *id.* at 1100 (mere detention at border not custody); *United States v. Fernandez-Ventura*, 132 F.3d 844, 846-47 (1st Cir. 1998) (events otherwise enough to constitute custody not enough to establish custody in context of entry to country because of strong governmental interest in controlling borders); *United States v. Moya*, 74 F.3d 1117, 1119-20 (11th Cir. 1996) (same); *United States v. Park*, 947 F.2d 130, 138 (5th Cir. 1991) (normal border inspections do not require *Miranda* warnings), *vacated in part on other grounds*, 951 F.2d 634, 636 (5th Cir. 1992).

The only decision which has required *Miranda* warnings at a border inspection is *United States v. Estrada-Lucas*, 651 F.2d 1261 (9th Cir. 1980). There, the Ninth Circuit applied a mixed subjective and objective test to determine whether the warnings were required, an approach which has since been disapproved of in *United States v. Butler*, 249 F.3d at 1099. Under the old Ninth Circuit rule, *Miranda* warnings were not required unless the questioning agents had probable cause to believe the person questioned had committed an offense or the person had been arrested. *Chavez-Martinez v. United States*, 407 F.2d 535, 539 (9th Cir. 1969). The court in *Butler* revised the Ninth Circuit test for custody by holding that, while probable cause may still be considered as an objective, and not a subjective, factor in assessing custody (as recognized in *Stansbury*, 511 U.S. at 325), only the objective circumstances of the interrogation are relevant in a custody inquiry. 249 F.3d at 1099.*

---

* Although we doubt that *Estrada-Lucas* remains good law, we would not in any event hold that it governs in these cases. In *Estrada-Lucas*, defendant was charged with importing $19,000 worth of jewelry into the United States without declaring it. Defendant presented herself for inspection at the Mexican border and gave conflicting answers to inspection officers about the jewelry which they found in her bag. She was held in a secondary inspection area where the jewelry was laid out in the open on an inspection counter in the same office, and she was questioned. Applying the old Ninth Circuit test, the court held that she should have been given *Miranda* warnings because the officers had probable cause to believe she had committed a crime and she was in custody. She was in custody, they reasoned, because evidence of her guilt — the jewelry — was displayed prominently in front of her. In addition, she was not told that she was

More relevant is *People v. Forster*, 35 Cal. Rptr. 2d 705 (Ct. App. 1994), a case with the same material facts as this one. In *Forster*, the California Court of Appeal held that a suspect detained by federal border authorities so that a state police officer could question him about DUI was not entitled to *Miranda* warnings before the state police questioned him. *Id.* at 710. The court likened the case to a routine traffic stop, finding the fact that the defendant was questioned in the customs office, and not the roadside, was not a material distinction under the circumstances. *Id.* The defendant was not under arrest, he was detained in a public area of the customs office without restraints, and the police were not overbearing in their questioning. The detention lasted more than an hour, but the court noted that it took the state police that long to get to the inspection station and that border inspectors, who do not investigate DUI cases, did not interrogate defendant during that period. *Id.* at 709-10.

In the cases before us, none of the defendants were under arrest before they were questioned. They were all detained in public areas of customs offices. There are no findings that any of the defendants were restrained in any way. Unlike the defendant in *Estrada-Lucas*, Garbutt was allowed to make several telephone calls; she was free to leave the secondary inspection office and go outside the office to smoke cigarettes; she even made a telephone call after she was questioned by the state police officer. Furthermore, there are no findings that the police officers in these cases were overbearing toward defendants.

Also unlike *Estrada-Lucas*, the border officials were not responsible for determining whether probable cause existed with respect to the state crime and did not propose to do so. Once the state police officers arrived, the questioning mirrored what would have occurred at the roadside. Again, unlike *Estrada-Lucas*, defendants here did not have evidence of their guilt laid out next to them while they were being questioned. Waite and Demarchena were detained for less than an hour, while Garbutt was detained for seventy-five minutes. Garbutt's detention, although longer than the average roadside stop, was similar to that in *Forster* and is similarly explained by the time necessary for the state police officer to reach the border station.

---

free to leave and was not led to believe that the jewelry the officers found would be handled as a minor administrative matter. *Estrada-Lucas*, 651 F.2d at 1266.

We follow the holding of *Forster*. Under that holding, defendants were not in custody while in the border station, and, therefore, were not entitled to *Miranda* warnings at that time. The motions to suppress were properly denied.

*Affirmed.*