24CA0970 Peo in Interest of NG 01-15-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0970
El Paso County District Court No. 22JD774
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of N.G.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Tow and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Jackson Strain, Deputy State
Public Defender, Colorado Springs, Colorado, for Juvenile-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In the proceedings below, the juvenile, N.G., was adjudicated delinquent.  In resolving this appeal, we consider whether section 19-2.5-402, C.R.S. 2025, bars a juvenile defendant from discovering the diversion records of an alleged victim even when there is a good faith belief that these records contain relevant and exonerating evidence.  We conclude that the statutory language of section 19-2.5-402 is clear and unambiguous and creates an outright bar to the discovery of diversion records.  We also conclude that even if N.G. had a constitutional right to access the diversion records, notwithstanding the statute, any error was harmless beyond a reasonable doubt.  Therefore, we affirm.

## I.     Background

¶ 2     N.G. and N.B., the alleged victim, attended the same high school.  One school day, N.G. began receiving inflammatory messages on Snapchat from N.B.  Later that day, the verbal conflict escalated into a physical fight between N.G. and N.B., which was captured on video.

¶ 3     School staff intervened and pulled the two away from each other.  Two school staff members restrained N.B. on the ground.  Another staff member restrained N.G. upright.  N.G. broke free of

the staff member's grip and kicked N.B. in the face before she was once again restrained by staff.

¶ 4 Both juveniles were charged as a result of the incident. N.B. was offered and completed diversion.

¶ 5 The prosecution charged N.G. with the following relevant offenses: (1) assault in the third degree; (2) harassment; (3) interference with staff, faculty, or students of educational institutions; and (4) disorderly conduct.

¶ 6 N.G. requested a jury trial. Before the trial, N.G. issued a subpoena for N.B.'s diversion records. The prosecution filed a motion to quash the subpoena, arguing that section 19-2.5-402 prohibits any diversion information from being subpoenaed for any purpose. N.G. filed a brief in support of the request, arguing that the statute was ambiguous and that her constitutional rights entitled her to the records. She also argued that, at a minimum, the records should be subject to an in camera review to avoid any constitutional infirmity. The prosecution filed a reply, again arguing that diversion records are specifically exempted from subpoena. The prosecution further argued that because the statute also exempts diversion records from any other court process or

proceedings, the court was prohibited from reviewing the records in camera.

¶ 7    Following a hearing, the juvenile court granted the prosecution's motion to quash, holding that the statute "reads pretty clearly," and that the diversion records were not subject to subpoena or any other court process or proceeding.

¶ 8    At trial, N.G. asserted a defense of self-defense. The jury adjudicated N.G. delinquent on all charges.

## II.    Discussion

### A.    Standard of Review and Relevant Law

¶ 9    We review de novo issues of statutory interpretation. *McCulley v. People*, 2020 CO 40, ¶ 10. In construing a statute, our goal is to ascertain and give effect to the General Assembly's intent. *Id.* To determine the intent of the General Assembly, we first look to the statutory language, giving words and phrases their plain and ordinary meanings. *Id.* We must read the words and phrases in a statute "in context" and "according to the rules of grammar and common usage." *McCoy v. People*, 2019 CO 44, ¶ 37. And we must "avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

¶ 10    A statute is ambiguous if it is susceptible of multiple reasonable interpretations. *Id.* at ¶ 38. But if the language of the statute is clear and unambiguous, we give effect to its plain meaning and apply the statute as written. *Manjarrez v. People*, 2020 CO 53, ¶ 19. In such a situation, the plain meaning rule "is both the first and the last canon and nothing more is required of the judicial inquiry." *Carrera v. People*, 2019 CO 83, ¶ 18.

¶ 11    Section 19-2.5-402(4)(a), provides, in relevant part:

> The risk screening tool and any information obtained from a juvenile in the course of any screening, including any admission, confession, or incriminating evidence, obtained from a juvenile in the course of any screening or assessment in conjunction with proceedings pursuant to this section or made in order to participate in a diversion or restorative justice program is not admissible into evidence in any adjudicatory hearing in which the juvenile is accused *and is not subject to subpoena or any other court process for use in any other proceeding or for any other purpose.*

(Emphasis added.)

## B.    Analysis

¶ 12    N.G. contends that the statute is (1) ambiguous and (2) unconstitutional as applied to her unless we accept her interpretation of its language. We disagree with both contentions.

4

### 1.    The Statute Is Not Ambiguous

¶ 13    In support of her first contention, N.G. points to the phrase "other court proceeding." N.G. agrees that the statute bars the use of N.B.'s diversionary records in any court proceedings against N.B., but nonetheless suggests that the statute requires the state to turn over any exculpatory evidence contained in N.B.'s diversion records to N.G.

¶ 14    We initially note that N.G.'s recitation of the statute is incorrect. The section actually states that the evidence is inadmissible when an accused juvenile isn't subject to "any other court *process*." § 19-2.5-402(4)(a) (emphasis added). Because the word "other" is undefined by statute or case law, we interpret it according to its ordinary and natural meaning, aided by the dictionary definition. *McCoy*, ¶ 37. Merriam-Webster Dictionary defines "other," to mean, among other things, "additional." Merriam-Webster Dictionary, https://perma.cc/E7X8-866N. Section 19-1-103, C.R.S. 2025, provides that, in the context of the Children's Code, the "court" "means the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver." § 19-1-103(89).

¶ 15    "Process" is undefined by statute, but its meaning was explored in *Isis Litigation, L.L.C. v. Svensk Filmindustri,* 170 P.3d 742, 745 (Colo. App. 2007).  While the division in *Isis* did not explicitly define "process," it noted that other jurisdictions had defined it as "action taken pursuant to judicial authority" and "the means whereby a court compels a compliance with its demands." *Id.* (citing *State v. Graves,* 170 Vt. 646, 757 A.2d 462, 464 (2000)). Black's Law Dictionary further defines "process" as "the proceeding in any action or prosecution, a summons or writ, esp. to appear or respond in court. – also termed judicial process; legal process." *Process,* Black's Law Dictionary 1460 (12th ed. 2024).  "Proceeding" is defined by Black's Law Dictionary as "the business conducted by a court or other official body; a hearing."  *Proceeding,* Black's Law Dictionary 1459 (12th ed. 2024).  Thus, "process" encompasses a wider range of judicial activity than "proceeding."

¶ 16    Taken in context with the word "any,"[1] which directly precedes the relevant statutory phrase, we interpret this portion of the

---

[1] The word "any" is not defined in the Children's Code.  However, binding case law provides that, "[w]hen used as an adjective in a statute, the word 'any' means 'all.'"  *BP Am. Prod. Co. v. Colo. Dep't of Revenue,* 2016 CO 23, ¶ 18.

6

statute to mean "all additional judicial processes." In our view, this statutory language is unambiguous and leaves no room for N.G.'s assertion that the statute only bars the diversion records from being used against N.B. in her own legal proceedings. Rather, the unambiguous language of the statute bars diversion records from being produced for *any* other court process or proceeding — including an in camera review.

¶ 17　Because the language of section 19-2.5-402(4)(a) is clear and unambiguous, we reject N.G.'s invitation to apply the canon of constitutional avoidance to interpret the statute in a way that requires N.B.'s diversion records to be released. *See People in Interest of T.B.*, 2019 CO 53, ¶ 34 ("[T]he canon of constitutional avoidance has no application in the absence of statutory ambiguity." (quoting *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 484 (2001))).

### 2.　Any Error Was Constitutionally Harmless

¶ 18　N.G. next contends that applying the statute as written would render it unconstitutional under the circumstances here. Thus, she raises an as-applied challenge to section 19-2.5-402(4)(a)'s constitutionality. N.G. argues that N.B.'s diversion records —

specifically N.B.'s statement of responsibility — were exculpatory and supported her claim that N.B. was the initial aggressor. And she argues that the court's error in barring her from obtaining the records violated her right to due process under *Brady*, and the error wasn't harmless. We aren't persuaded.

### a. Applicable Legal Principles

¶ 19 To prevail on an as-applied challenge, a party must establish beyond a reasonable doubt that the statute at issue is unconstitutional under the circumstances in which the party has acted or proposes to act. *People v. Sewick*, 2017 CO 45, ¶ 6; *People in Interest of A.C.E-D.*, 2018 COA 157, ¶¶ 8-9. "[W]here, as here, the constitutional challenge is as-applied, we must examine the case's circumstances." *People v. Lee*, 2019 COA 130, ¶ 16, *aff'd*, 2020 CO 81.

¶ 20 Under section 18-1-704(1), C.R.S. 2025, an individual is justified in using physical force to defend herself from what she reasonably believes to be the imminent use of unlawful physical force by another. This affirmative defense requires that, given the totality of the circumstances, a reasonable person would have

believed and acted as the defendant did. *People v. Luna*, 2020 COA 123M, ¶¶ 25-26.

¶ 21    Under the circumstances presented here, self-defense is an additional element of the crime that the prosecution must disprove beyond a reasonable doubt. *Galvan v. People*, 2020 CO 82, ¶ 21. As applicable here, one of the ways the prosecution can meet its burden is by proving beyond a reasonable doubt that the defendant was the initial aggressor. *Castillo v. People*, 2018 CO 62, ¶ 40. A person is not legally justified in using physical force against another if they are the initial aggressor. *Id.*; § 18-1-704(3)(b). Said differently, a person is an initial aggressor — and therefore not entitled to use physical force in self-defense — if they initiated the physical conflict by using unlawful physical force. *Castillo*, ¶ 43. When the sequence of events underlying an offense occurred over a period of time, the jury should evaluate whether the events were one "unit of experience" or whether there was a break in the action to determine whether the defendant was the initial aggressor for all or part of the episode. *See id.* at ¶ 48.

¶ 22    We review preserved trial errors of constitutional dimension for constitutional harmless error to determine whether reversal is

required.  *Hagos v. People*, 2012 CO 63, ¶ 22; *see also People v. Flynn*, 2019 COA 105, ¶ 31 (errors involving alleged *Brady* violations are reviewed for constitutional harmless error); *People v. Casper*, 2025 COA 69, ¶ 18 (reviewing defendant's as-applied constitutional challenge for constitutional harmless error).  Under the constitutional harmless error standard, reversal is required unless the error was "harmless beyond a reasonable doubt." *Hagos*, ¶ 11.  An error is not "harmless beyond a reasonable doubt" if "there is a reasonable possibility that the [error] might have contributed to the conviction."  *Id.* (alterations in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

¶ 23    Among the factors we consider in deciding whether the error was harmless beyond a reasonable doubt are whether the evidence is cumulative and the overall strength of the prosecution's case. *People v. Omwanda*, 2014 COA 128, ¶ 32.  We review the record as a whole to decide whether there is a reasonable possibility that the defendant could have been prejudiced by the error.  *People v. Springsted*, 2016 COA 188, ¶ 66.

### b. Any Error in Denying N.G. Access to N.B.'s Diversion Records Was Harmless Beyond a Reasonable Doubt

¶ 24    Even if we assume that the court erred by failing to provide N.G. with access to N.B.'s diversion records, we conclude such error was harmless beyond a reasonable doubt.

¶ 25    The prosecution acknowledged in its opening statement and closing argument that N.B. was the initial aggressor when the fight began and presented overwhelming evidence that N.B. was the person who started the fight.

¶ 26    The prosecution called N.B. to testify in its case-in-chief. N.B. acknowledged during her testimony that she made inflammatory statements to N.G. through Snapchat to scare N.G. The Snapchat messages were also admitted into evidence and showed that at no point did N.G. reciprocate N.B.'s threats to engage in a physical fight. And, on cross-examination by N.G.'s defense counsel, N.B. acknowledged that N.G. never agreed to fight during the Snapchat conversation. Given this evidence, any diversion records demonstrating N.B.'s accountability for starting the fight would have been cumulative.

¶ 27    Moreover, the prosecution presented overwhelming evidence to defeat N.G.'s assertion that she acted in self-defense *after* the girls were separated the first time.

¶ 28    Multiple witnesses testified that the physical portion of the fight occurred over several minutes.  The witnesses also testified that there was a lapse of time between two and ten seconds from when the girls were separated and when N.G. kicked N.B. in the face.  The assistant principal who restrained N.G. testified that after the girls were pulled apart the first time, it appeared the fight had ended.  He also said that when N.G. broke free from his grip, she prevented him from fulfilling his duty to protect N.B. and other students from harm, and that N.G.'s kick to N.B.'s face appeared intentional.

¶ 29    A second assistant principal, who assisted with restraining N.B., testified that N.G.'s kick to N.B.'s face wasn't instantaneous, appeared intentional, and occurred once the two girls had been separated and while N.B. was restrained on the ground.  A school security officer and a third assistant principal, who each assisted with breaking up the fight, saw the kick and said that it occurred after the girls were separated and while N.B. was on the ground

with no way to defend herself. N.B. also testified that she thought the fight was over when N.G. kicked her in the face.

¶ 30　　Viewing the record as a whole, we conclude there is no reasonable possibility that N.G. was prejudiced by the court's decision not to release N.B.'s diversion records. The jury heard ample evidence that N.B. instigated the fight, including on cross-examination by defense counsel, and still adjudicated N.G. *See Flynn*, ¶ 31. Therefore, any error in this regard was harmless beyond a reasonable doubt. N.G's as-applied challenge therefore fails.

¶ 31　　Having determined that the relevant language in section 19-2.5-402(4)(a) is unambiguous and that N.G.'s as-applied challenge fails, the statute must be applied as written, *see Manjarrez*, ¶ 19, and the court didn't err by granting the prosecution's motion to quash N.G.'s subpoena of N.B.'s diversion records.

### III.　Disposition

¶ 32　　The judgment is affirmed.

JUDGE TOW and JUDGE BERGER concur.