Filed 3/20/14  P. v. Arias CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047751 |
| v. | (Super. Ct. No. 08NF3469) |
| ALEJANDRO ARIAS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Alejandro Arias was convicted of sexually assaulting patients at the nursing home where he worked. He contends reversal is required because the police did not read him his *Miranda* rights (see *Miranda v. Arizona* (1966) 384 U.S. 436) before interviewing him about the crimes. However, the record shows appellant was not in custody for *Miranda* purposes at the time he was interviewed. Therefore, his statements were properly admitted into evidence, and there is no reason to disturb the judgment.

FACTS

On the morning of October 28, 2008, police detectives Omar Adham and Sal Enriquez went to the Anaheim Terrace Care Center to investigate allegations appellant had been sexually molesting patients he cared for there as a nursing assistant. The detectives were wearing plain clothes, with their guns and badges displayed on their belts. Upon meeting appellant, they told him he was not under arrest and did not have to speak to them. They then asked appellant if he would be willing to accompany them to the police station so they could talk to him about the allegations. Appellant said he would be willing to do so. He also agreed to let the detectives photograph him and take a DNA sample from him.

After doing so, the detectives transported appellant to the Anaheim police station in an unmarked squad car. They did not give appellant the option of taking his own vehicle and meeting them there. However, before departing, they did tell him that anytime he wanted to leave they would drive him back to work. The ride to the station took about 15 minutes. Along the way, the detectives made small talk with appellant; they did not discuss the allegations with him or threaten him in any fashion.

When they arrived at the station, the detectives accompanied appellant to an interview room on the second floor, in the homicide detail. The detectives chose that room because at the time, it was the only one available that had video recording capability. Appellant was seated in one corner of the room, and Adham sat between him and the door. Enriquez was present, as well, but he did not participate in the interview.

2

Adham reminded appellant he was not under arrest and free to leave at any time. After appellant said he understood, Adham started the interview by asking him general questions about his background and family. Per his standard policy, Adham also had appellant turn off his cell phone, so they would not be interrupted. When he asked appellant if he had ever been arrested before, appellant said no. Appellant did say he was diabetic. However, he said he was feeling okay at the moment, and Adham, whose son is diabetic, did not notice any signs to the contrary.

In response to Adham's questioning, appellant said his job duties at Anaheim Terrace included bathing and changing elderly patients. While admitting he was attracted to older women, he insisted he never did anything improper with his patients. Adham was not convinced. In order to get appellant to open up, he surmised that some of appellant's patients were lonely and may have wanted sexual attention from him. Appellant admitted that was possible, but he continued to deny any wrongdoing. At that point, Adham told appellant he knew he was lying because he had talked to several patients who had implicated him in the alleged offenses. Adham also told appellant it wouldn't do him any good to withhold the truth, because the police were eventually going to find out what happened.

Although appellant was reluctant to admit it, he eventually confessed to committing sexual misconduct on the job. Speaking about a patient named Karen, appellant said he massaged her breasts, inserted his fingers into her vagina, and made her touch his penis. He also admitted he had inappropriate sexual contact with four other patients he cared for. Appellant admitted his conduct was wrong and it was a mistake for him to do what he did.

At the end of the interview, which lasted about an hour and was interspersed with two short breaks, appellant was arrested. Because of his diabetes, he was taken to the hospital to be "medically cleared" before being booked into jail.

3

In a 15-count information, appellant was charged with committing multiple sex crimes against his patients Karen R. and Elizabeth B. Among other things, the information alleged forcible lewd acts upon a dependent person by a caretaker and sexual battery on an institutionalized person. (Pen. Code, §§ 288, subd. (b)(2), 243.4, subd. (b).)

At trial, Karen and Elizabeth testified appellant sexually victimized them on multiple occasions while they were under his care at Anaheim Terrace. They said that being elderly and incapacitated, they were unable to prevent appellant from sexually exploiting them.

To corroborate Karen and Elizabeth's testimony, the prosecution sought to introduce the videotape of appellant's interview with Detective Adham. Defense counsel objected on the basis appellant was not informed of his *Miranda* rights prior to the interview, and his statements were involuntary. However, the trial court determined *Miranda* did not apply because appellant was not in custody during the interview. The court also found appellant's statements were voluntarily rendered. Therefore, it allowed the prosecution to admit the videotape into evidence and play it for the jury. Appellant was convicted as charged, and the trial judge sentenced him to 21 years in prison for his crimes.

DISCUSSION

Unlike he did at trial, appellant does not raise voluntariness as a separate issue on appeal. Rather, he contends his statements were involuntary *because* he was not given his *Miranda* rights before he confessed. However, we agree with the trial court that appellant was not in custody for *Miranda* purposes when he was questioned. Therefore, *Miranda* did not apply, and appellant's statements were properly admitted into evidence.

Under *Miranda*, "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any

4

statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' [Citation.] Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial. [Citations.] An officer's obligation to administer *Miranda* warnings attaches, however, 'only where there has been such a restriction on a person's freedom as to render him "in custody."' [Citations.] In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' [Citations.]" (*Stansbury v. California* (1994) 511 U.S. 318, 322.)

Factors bearing on the custody issue include whether the suspect was formally arrested before questioning, the length of his detention, where it occurred and the ratio of officers to suspects. (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) "Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. [Citation.]" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404.)

Relying on *United States v. Barnes* (9th Cir. 2013) 713 F.3d 1200 (*Barnes*), appellant argues the fact Adham confronted him with evidence of his guilt during the interview, and the interview took place within the confines of a law enforcement agency indicates he was in custody for *Miranda* purposes. Those are pertinent factors, to be sure. (See *id*. at p. 1204.) However, "*Miranda* warnings are not required 'simply because the questioning takes place in the station house, *or because the questioned person is one whom the police suspect*.' [Citation.]" (*People v. Moore* (2011) 51 Cal.4th 386, 402.)

5

The distinguishing feature of *Barnes* is that the defendant in that case "did not appear voluntarily [for questioning] but rather was told to appear for a meeting with his parole officer under threat of revocation of parole." (*Barnes, supra*, 713 F.3d at p. 1204.) Although the defendant expected to have a routine meeting with his parole officer when he arrived, he was instead searched and whisked off to a private office for questioning by the FBI. (*Id*. at p. 1203.)

Here, in contrast, appellant was not tricked into talking to the police. Rather, he voluntarily agreed to come to the police station knowing the detectives wanted to question him about his alleged misconduct. Although the detectives told appellant he was not under arrest and did not have to speak with them, he freely acquiesced to their request for an interview. These circumstances indicate appellant was not in custody. (*California v. Beheler* (1983) 463 U.S. 1121, 1122 [defendant not in custody where he "voluntarily agreed to accompany police to the station house" and "the police specifically told (him) he was not under arrest."]; *Oregon v. Mathiason* (1977) 429 U.S. 492, 493-495 [in finding stationhouse interrogation was noncustodial for *Miranda* purposes, court emphasized defendant "came voluntarily to the police station"]; *People v. Chutan* (1999) 72 Cal.App.4th 1276, 1282 [defendant not in custody since he "was invited to the police station and expressly told he was not under arrest"].) While the detectives did not give appellant the option of driving his own car to the police station, they did tell him they would take him back to work any time he wanted. (See *Green v. Superior Court* (1985) 40 Cal.3d 126, 131 [*Miranda* not implicated in this situation].)

Moreover, appellant was neither handcuffed nor questioned on the way to the police station. And once they arrived there, Adham was quick to remind appellant he was not under arrest and could leave at anytime. Although the interview lasted about an hour and took place behind closed doors with two detectives present, appellant was not physically restrained in any manner. Nor did the detectives brandish their weapons or threaten him at any time during the interview.

6

To be sure, Detective Adham was direct with appellant at times. When he thought appellant was not being forthcoming, he pressed him for information and exhorted him to tell the truth. However, the interview did not turn into a shouting match; Adham merely made clear his suspicions appellant was not being entirely honest with him. The fact Adham told appellant he had evidence of his guilt and thought he was lying does not compel a finding that appellant was in custody. (*Oregon v. Mathiason, supra*, 429 U.S. at pp. 495-496.)

Appellant argues it is significant that Adham asked him if he had ever been "arrested before." In his view, inclusion of the word "before" in this question implied "a similar event in the past. The obvious connotation [was] that this event is an arrest and the detective wants to know if appellant had previously experienced the same event." That strikes us as an overly analytical interpretation of the record. We are simply not persuaded the average person would read that much into Adham's question at the time it was posed. And to the extent such an implication was created, it was expressly refuted by Adham's repeated statements to appellant that he was not under arrest and free to leave at any time.

Taking all the circumstances into consideration — including the fact appellant voluntarily accompanied the detectives to the police station and was expressly told he was *not* in custody — we believe that up until the point where appellant was formally arrested at the end of the interview, he was not restrained to the degree associated with a formal arrest. Therefore, he was not in custody for *Miranda* purposes, and his statements were admissible. (See *People v. Moore, supra*, 51 Cal.4th at pp. 398-404 [defendant not in custody during stationhouse interview that turned highly accusatory, lasted an hour and 45 minutes, and culminated in defendant's arrest].) We discern no basis for disturbing the trial court's rulings in this regard.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.


WE CONCUR:


MOORE, J.


ARONSON, J.

8