Filed 7/27/15  P. v. Hall CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| THE PEOPLE, | C076935 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF1300128) |
| v. | |
| DAVID SCOTT HALL, | |
| Defendant and Appellant. | |

Defendant David Scott Hall stands convicted by a jury of two counts of corporal injury on a cohabitant, one count of false imprisonment, and one count of felony child abuse.  On appeal, he challenges his conviction for false imprisonment and one of the counts charging corporal injury, claiming the trial court prejudicially erred by admitting evidence of the victim's out-of-court statements and by denying his motion to suppress evidence obtained in his pre-arrest interaction with the police at the hospital.  Defendant

1

also contests the restitution and parole revocation fines imposed by the trial court, and he contends the abstract of judgment requires correction.

We agree the restitution and parole revocation fines are excessive and that the abstract must be corrected, but we reject defendant's evidentiary challenges. Accordingly, we reduce the restitution fine and parole revocation fine but otherwise affirm the judgment. We order the trial court to correct the abstract of judgment.

FACTS AND PROCEEDINGS

In this consolidated case arising from crimes committed in 2012 and 2013, defendant was charged with willfully inflicting corporal injury resulting in a traumatic condition on a spouse or roommate--Casey H. (Pen. Code, § 273.5, subd. (a)--count one; unless otherwise set forth, statutory references that follow are to the Penal Code); false imprisonment of Casey H. by violence, menace, fraud, or deceit (§§ 236, 237, subd. (a)--count two) (hereinafter sometimes collectively referred to as "the 2013 crimes"); willfully inflicting corporal injury resulting in a traumatic condition on a spouse or roommate--Maria W. (§ 273.5, subd. (a)--count three); and felony child abuse of three minor children (§ 273a, subd. (a)--count four) (hereinafter sometimes collectively referred to as "the 2012 crimes"). As to all counts, it was alleged defendant had a prior prison conviction within the meaning of section 667.5, subdivision (b); as to count one only, it was alleged defendant had personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (e), rendering it a serious felony (§ 1192.7, subd. (c)(8)). It was also alleged defendant was eligible for sentencing to state prison because a violation of section 273.5, subdivision (a) is exempted from section 1170, subdivision (h).

Defendant does not challenge his conviction for the 2012 crimes, and the facts underlying those crimes are not relevant to any other issue in this appeal. Therefore, we provide no further background relative to the 2012 crimes.

2

With reference to the 2013 crimes, the evidence adduced at trial demonstrated that at approximately 10:30 p.m. on the night of February 28, 2013, defendant beat Casey H., his live-in girlfriend, and then locked her in their trailer. The following day, she found someone to drive her to her friend April Morton's house, where she identified defendant as her attacker, rested, and cleaned herself up before April convinced her to go to the hospital. Casey H. was treated in the emergency room, where the doctor, Paul Swanson, noted her injuries included multiple facial bruises, bruises on her neck, chest, back, arms and legs, a laceration above the right eyebrow, a broken hyoid bone in her neck, and blood behind her eardrums indicating a possible skull fracture. At the emergency room, Casey H. again identified defendant as her attacker to Deputy Andrea Murana, who came to the hospital to take Casey H.'s statement. While Deputy Murana was taking Casey H.'s statement, defendant arrived at the hospital. Deputy Murana questioned defendant, who appeared disheveled, smelled of alcohol, and had watery and bloodshot eyes. Defendant said he was at the hospital to collect paperwork for his lawyer. He acknowledged he and Casey H. were living together and engaged in a sexual relationship, admitted he had bit her neck and shoulder as a sexual prelude and he had locked her in the trailer "for her own protection," but adamantly denied that he had harmed Casey H.

The jury found defendant guilty on all counts, and found true the allegation that defendant personally inflicted great bodily injury on Casey H. In a bifurcated proceeding, the jury also found true that defendant had served a prior prison term within the five years preceding the commission of the charged offenses. Defendant was sentenced to an aggregate term of 12 years four months: the upper term of four years plus five years consecutive due to the great bodily injury enhancement for count one; eight months (one-third the middle term) for count two stayed pursuant to section 654; a consecutive one year (one-third the middle term) for count three; a consecutive one year four months (one-third the middle term) for count four; and one year for the prior prison

3

enhancement. The trial court also ordered defendant to pay a restitution fine of $14,400, and it imposed and stayed a parole revocation fine in the same amount.

We recite additional factual and procedural history relevant to the issues raised by defendant on appeal in the ensuing discussion.

DISCUSSION

Defendant contends his conviction on counts one and two must be reversed because the trial court prejudicially erred (1) by admitting out-of-court statements made by Casey H. as spontaneous declarations, and (2) by admitting his statements made to law enforcement at the hospital before he was advised of his constitutional rights. Defendant also contends (3) the trial court erred by imposing the restitution and parole revocation fines, and (4) that the abstract of judgment requires correction. As noted earlier, we conclude the restitution and parole revocation fines must be reduced to the statutory maximums, and the abstract of judgment must be corrected, but the trial court did not err in admitting Casey H.'s statements to third parties or defendant's statements to Deputy Murana.

I

*Spontaneous Declarations*

Defendant contends it was an abuse of discretion for the trial court to admit as spontaneous declarations the out-of-court statements Casey H. made to April Morton, her daughter Amber Morton, the emergency room doctor, and Deputy Murana because she made them after she had the opportunity to reflect, deliberate, and ponder, and when she was no longer under the stress of excitement.

A spontaneous declaration or excited utterance is an exception to the hearsay rule that "(a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) "The crucial

4

element in determining whether an out-of-court statement is admissible as a spontaneous declaration is the mental state of the speaker. [Citation.] 'The nature of the utterance--how long it was made after the startling incident and whether the speaker blurted it out, for example--may be important, but solely as an indicator of the mental state of the declarant.' [Citation.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 811.)

We review the trial court's decision whether to admit a spontaneous statement for abuse of discretion. (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 73.) Whether the requirements to qualify a statement as a spontaneous declaration have been made is a factual question, and we uphold the determination of the trial court in that regard if it is supported by substantial evidence. (*Ibid.*) Due to the nature of the inquiry, "the discretion of the trial court is at its broadest" when it determines whether an utterance was made while the declarant was still in a state of nervous excitement. (*People v. Poggi* (1988) 45 Cal.3d 306, 318-319.)

Over defendant's objection, the following testimony was admitted at trial:

April Morton, a friend of Casey H. who saw her at about noon on March 1, 2013, testified that Casey H. appeared at her house scared and distraught, covered in bruises, and carrying everything she owned. April asked Casey H. what had happened, and Casey H. told her that defendant had "beat her up and locked her in his trailer." Casey H. said she was scared and asked if she could stay with April for a while. April let Casey H. rest and clean up, and, after about an hour and a half, she convinced Casey H. to go to the hospital.

Amber Morton, who is April's daughter and saw Casey H. at April's house on March 1, 2013, testified that Casey H. was covered in bruises and that "[s]he was crying, she was really upset, and emotionally, she was all over the place." Casey H. did not specifically identify defendant, but told Amber, "something to the effect of, 'He really beat me up this time,' or 'He really got me this time.'"

5

The emergency room doctor who treated Casey H. testified that Casey H. reported that the man she was living with had struck her repeatedly with his hand and bit her, that this abuse had been occurring daily for three weeks, and that the day before he had struck her in the back, chest, abdomen, back of the head, and face. The doctor's physical examination of Casey H. revealed that she had multiple facial bruises, bruises on her neck, chest, back, arms and legs, a laceration above the right eyebrow, the hyoid bone in her neck was broken, and she had blood behind her eardrums indicating a possible skull fracture.

Deputy Sheriff Andrea Murana, who was dispatched to the hospital at about 3:30 p.m. on March 1, 2013, to take Casey H.'s statement, testified that when she walked into the emergency room Casey H. was crying and visibly shaken, and upon seeing Deputy Murana immediately blurted out defendant's name.

The crux of defendant's contention that the trial court erred in admitting Casey H.'s statement is that Casey H. did not make these statements until several hours after defendant attacked her and locked her in their trailer, and after she initially declined to incriminate defendant. It does appear Casey H.'s statements to the Mortons were made approximately 13 and a half hours after the charged acts; her statement to the doctor was not made until another hour and a half had lapsed, and her unsolicited utterance to Deputy Murana was made another hour and a half later.

But, defendant fails to account for the evidence that showed Casey H. went to April Morton's house as soon as she escaped from the locked trailer, where defendant had left her battered and bruised. And, though Casey H. was initially hesitant to report the attack to the police, it appears her reticence was premised on her own desire to avoid prosecution for outstanding warrants rather than indicative of any deliberation or contrivance by Casey H.

Defendant also fails to acknowledge the substantial evidence of Casey H.'s mental state at the time of the attacks. The witnesses collectively described Casey H. as scared,

6

distraught, crying, emotionally all over the place, bruised, beaten, disfigured, coughing, and speaking in a hoarse voice.  It is reasonable for the trial court to deduce from this evidence that Casey H. remained traumatized, terrified, and in substantial pain at the time she made statements to each of the testifying witnesses.  Under these circumstances, we conclude the trial court did not abuse its broad discretion in finding Casey H. was still in an excited state when she made the statements to the Mortons, to the emergency room doctor, and to Deputy Murana.  Therefore, the statements were properly admitted as spontaneous declarations.

In passing, defendant also attempts to raise an argument that admission of Casey H.'s statements violated the confrontation clause of the Sixth Amendment, and to argue the admission of the nontestimonial hearsay evidence violated his due process rights.  We deem these claims forfeited because they are not supported by cogent analysis nor identified in a heading.  (Cal. Rules of Court, rules 8.204(a)(1)(B) & 8.360(a); *People v. Roscoe* (2008) 169 Cal.App.4th 829, 840.)

II

*Motion to Suppress*

Defendant contends the trial court prejudicially erred in denying his motion to suppress the statements he made to Sheriff's Deputy Andrea Murana while she interrogated him at the hospital without advising him of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).  We conclude the interrogation of defendant at the hospital was not custodial, so it was not error to admit into evidence defendant's pre-*Miranda* statements.

"An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'  [Citation.]  Custody consists of a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest.

7

[Citations.]  When there has been no formal arrest, the question is how a reasonable person in the defendant's position would have understood his situation.  [Citation.]" (*People v. Moore* (2011) 51 Cal.4th 386, 394-395 (*Moore*).)

Several factors are useful in this inquiry:  "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning."  (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.)  Other factors "are [(6)] whether the suspect agreed to the interview and was informed he or she could terminate the questioning, [(7)] whether police informed the person he or she was considered a witness or suspect, [(8)] whether there were restrictions on the suspect's freedom of movement during the interview, and [(9)] whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and [(10)] whether the suspect was arrested at the conclusion of the interview."  (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404.)

" 'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact.  [Citation.]  When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a deferential substantial evidence standard" [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' "  (*Moore*, *supra*, 51 Cal.4th at p. 395.)

The trial court conducted a foundational hearing to determine whether to admit the statements defendant made to Deputy Murana at the hospital prior to his arrest.

At the hearing, Deputy Murana gave the following testimony:  Defendant came into the emergency room while Deputy Murana was speaking with Casey H.  By then,

Casey H. had named defendant as her attacker and had told Deputy Murana that defendant had refused to permit her to leave the trailer. Thereafter, when she approached defendant in a noisy hallway entrance to the emergency room, Deputy Murana did not draw her weapon, arrest or handcuff defendant, or advise him of his *Miranda* rights; she simply asked him to tell her his side of the story.

Deputy Murana was having a difficult time hearing defendant so she asked if they could move somewhere quieter, which defendant agreed to do. They moved to an empty nearby waiting room, where Deputy Murana continued questioning defendant for approximately 35 minutes. Defendant never asked Deputy Murana to stop asking questions, never objected to the questioning, never indicated a desire to leave, and Deputy Murana never indicated that he could not leave. Defendant did, however, seek and obtain permission to get a drink of water. Also, while they were still in the hallway, defendant asked if he could change chairs, and Deputy Murana asked him to "stay here for another minute" because she was comfortable with their location relative to Casey H.'s location in the emergency room. Shortly after they moved to the waiting room, a second officer arrived, and towards the end of Deputy Murana's and defendant's interaction, as he was being arrested, a third officer arrived. The two additional officers remained at the door to the waiting room, approximately 15 to 20 feet away, to provide assistance if requested and to protect Casey H.'s safety; they were not in defendant's line of sight, but he could have seen them if he turned around. They did not participate in the questioning.

The trial court found that when Deputy Murana began questioning defendant in the hallway, there was no custodial interrogation because defendant had come to the hospital voluntarily and without law enforcement instigation. The trial court found it became a closer question when they removed to the nearby waiting room, but since that too is a public room with open doors into which people are presumably entering and exiting, it was not custodial either. And since defendant would not have even seen the

9

other officers unless he turned around, their presence did not render the encounter a custodial interrogation. Defendant objected, arguing that under these circumstances defendant would not be free to leave, so it was a custodial interrogation. The trial court overruled defendant's objection, finding a reasonable person would have understood they were free to leave under these circumstances.

Applying the factors used to determine whether an interrogation is custodial for purposes of the *Miranda* advisement to the facts of the instant case, we conclude the trial court did not err in denying defendant's motion to suppress his statements to Deputy Murana.

First, the interrogation began in a public hallway at the hospital where the victim was being treated and where defendant came voluntarily and unbidden.

Second, defendant was not arrested or restrained during the interrogation, though he was arrested at the conclusion of the interview.

Third, the questioning lasted only 35 minutes and took place in a noisy public hallway and then, due to the noise, moved to an empty but public waiting room at the hospital with the door open.

Fourth, only one officer questioned defendant, and though another officer was posted outside of the waiting room during the questioning for safety reasons, the officer was not in defendant's line of sight. Nothing indicates the second officer's presence intimidated or otherwise impacted defendant; there was nothing in his arrival or presence that would have allowed defendant to reasonably conclude he was not free to go prior to the time of his arrest. Further, the arrival of the third officer did not occur until Deputy Murana was arresting defendant at the conclusion of the interrogation, so that officer's presence is not relevant.

Fifth, though defendant was not informed he could terminate the questioning, he did voluntarily agree to speak with Deputy Murana.

Sixth, though defendant may have suspected he was considered a suspect based on the location and timing of the questioning, there is no indication Deputy Murana informed him he was a suspect; rather, it appears she asked him for "his side of what happened."

Seventh, it does not appear defendant's movement was restricted as he was permitted to get a drink of water during the interview.

Based on these facts, the trial court did not err in concluding that a reasonable person in defendant's position would have felt free to end the questioning and leave; thus, it was not error to admit into evidence defendant's pre-*Miranda* statements to Deputy Murana.

III

*Restitution and Parole Revocation Fines*

Defendant contends the trial court erred by imposing a restitution fine and a parole revocation fine of $14,400 each. The People agree, and we concur. However, the parties propose different remedies: the People urge us to reduce the fines to $10,000 each, while defendant claims we should remand the issue to the trial court for rehearing. We will reduce the fines.

Pursuant to section 1202.4, subdivision (b), the trial court must impose a restitution fine in every case where a person is convicted of a crime unless it finds and states compelling and extraordinary reasons to the contrary. The court has the option of calculating the restitution fine by employing the discretionary formula set forth in section 1202.4, subdivision (b)(2). In that formula, the fine is "the product of the minimum fine [set forth in section 1202.4, subdivision (b)(1)] multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

11

Here, the trial court apparently applied this formula using the minimum fine of $300 applicable in 2014 times 12 years times four counts to yield a total of $14,400. However, the minimum fines used should have been calculated based on when the offenses were committed, not when defendant was convicted. (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.) Therefore, the formula should have been applied as follows: for the 2012 crimes the fine is $5,760 ($240 x 12 years x 2 counts) and for the 2013 crimes the fine is $6,720 ($280 x 12 years x 2 counts). (§ 1202.4, subd. (b).) The result of this calculation is a sum of $12,480.

Nevertheless, this sum exceeds the $10,000 statutory cap on restitution fines set forth in section 1202.4, subdivision (b)(1). Therefore, we reduce the restitution fine to the statutory cap of $10,000. And, because the parole revocation fine must be imposed in the same amount as the restitution fine (§ 1202.45, subd. (a)), it too must be reduced to $10,000.

IV

*Correction of Abstract of Judgment*

Defendant also contends, and the People agree, that the abstract of judgment erroneously reflects that he is being sentenced as a second striker pursuant to sections 667, subdivisions (b)-(i) and 1170.12. No prior strike conviction was pleaded or proved, and the trial court did not orally pronounce that defendant was to be sentenced pursuant to those provisions. Therefore, the inclusion of that reference in defendant's abstract of judgment is a clerical error that requires correction.

DISPOSITION

The judgment is modified to reduce the restitution fine and the parole revocation fine to $10,000 each. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment to reflect the reduced fines and to correct the erroneous indication in the original abstract of judgment that defendant was sentenced

12

pursuant to sections 667, subdivisions (b)-(i) and 1170.12.  The clerk of the trial court is directed to forward a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.


      HULL      , J.


We concur:


      BLEASE      , Acting P. J.


      RENNER      , J.

13