Filed 4/28/16  P. v. Pham CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052160 |
| v. | (Super. Ct. No. 15CF0089) |
| TRANG THU PHAM | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Trang Thu Pham on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against her client but advised the court she found no issues to argue on her behalf. We gave Pham 30 days to file written argument on her own behalf. That time has passed, and Pham has not filed any written argument.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant herself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.) Here, Pham did not raise any issues herself.

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel identified the following four issues: was there sufficient evidence to support Pham's conviction for vandalism (Pen. Code, § 594.3, subd. (a))[1]; was Pham in custody when she made incriminating statements to officers; did the trial court abuse its discretion when it denied Pham's section 17, subdivision (b)(1), motion; and did the court impose invalid probation terms.

We have reviewed the record in accordance with our obligations under *Wende* and *Anders,* and considered the information provided by counsel. We found no arguable issues on appeal. The judgment is affirmed.

FACTS

Saykya Sunnyata is a monk who has resided at the Huong Tich Buddhist Temple (the Temple) for over 20 years. Alice Hoa Nguyen (Alice) is the monk in charge

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

of prayers at the temple. Nguyen has lived at the temple for 13 years. In December 2014, both Sunnyata and Nguyen noticed damage on various temple statues. On December 16, 2014, surveillance videos showed images of a woman throwing objects at the temple. A Buddha statue that was damaged was worth approximately $5,000 in 2000. It is now worth $15,000, but neither Sunnyata nor Nguyen requested money for the damages.

Santa Ana Detective Alan Gonzalez was assigned to investigate vandalism at the Temple. On January 13, 2015, Gonzalez was contacted by Costa Mesa Officer Torres[2] regarding a possible suspect, Pham, matching the person shown in the surveillance video. Torres told Gonzalez that Pham was with him and had asked him to give her a ride to her residence, which was located near a Santa Ana Police substation (the substation). Rather than take her home, Gonzalez asked Torres to bring Pham to the substation. Gonzalez went to the substation with Detective Nguyen,[3] a certified Vietnamese translator.

Torres transported Pham, who was in the back seat of a marked police vehicle, to the substation. Pham was not handcuffed. Torres was wearing his police uniform with his gun and badge visible. Gonzalez had seen still pictures from the surveillance video of the Temple, and when he first saw Pham, he thought she looked like the woman in the pictures.

After Torres and Pham arrived at the substation, Pham got out of the vehicle. Gonzalez and Nguyen approached Pham—they were in plain clothes, but they were wearing badges. Gonzalez and Nguyen identified themselves as police officers and said they wanted to speak with her. They told Pham that they were investigating a series

---

[2]     The record does not contain Torres's first name.

[3]     The record does not contain Nguyen's first name.

of vandalisms. The officers advised Pham that she was not under arrest, she did not have to speak with them, and she was free to leave. The officers did not advise Pham of her rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). They did not record the contact.

When the officers showed her the surveillance photos, Pham admitted she was the person in the photographs and the video. Pham said she was the person throwing bottles at the Temple. Pham explained she vandalized the Temple because someone who had ties to the Temple had killed her family member. This exchange, which lasted five to 10 minutes, took place outside the vehicle in a public parking lot next to the substation. The officers arrested Pham.

An information charged Pham with felony vandalism of religious property (§ 594.3, subd. (a)) (count 1), and felony vandalism of $400 or more (§ 594, subds. (a), (b)(1)) (count 2). Before trial, as relevant here, Pham filed a motion to exclude her statements to police. After a hearing on the motion, the court denied the motion.

At trial, Sunnyata testified that Buddhists prayed not only in the Temple, but they also prayed to and worshiped the statues. Alice explained how part of the Buddhist practice is to venerate the statues with fruit and incense.

A jury convicted Pham on count 1, but was unable to reach a verdict on count 2. At the sentencing hearing on May 15, 2015, the trial court considered the probation and sentencing report, Pham's sentencing brief, and a psychological evaluation. The court indicated it was willing to consider a probationary sentence because Pham was delusional and this was not the typical attack on religion. The court denied Pham's section 17, subdivision (b), motion, but indicated it would grant five years of supervised probation, and if Pham had no issues at the end of three years, she could petition the court to terminate probation.

As the trial court was completing pronouncement of the terms and conditions of probation, Pham said, "I want to change lawyer [*sic*]." The court excused

the prosecutor and inquired of Pham as to her request for a new lawyer. The court had a brief conversation with Pham during which she complained about the conditions of probation. The court continued in open court with the prosecutor present. The court indicated it wanted to make sure Pham had sufficient time to process the information she had been given before the court proceeded further. The court opined that given Pham's current emotional state, it was not in anyone's best interest to place her on probation at this hearing. It expressed concern that without a better understanding of her situation, Pham would simply violate her probation. The court found good cause to continue sentencing and ordered Pham to be seen by the mental health professionals at the jail.

On May 26, 2015, with counsel and Pham's consent, the court continued with pronouncement of the sentence. The court ordered imposition of the sentence suspended and placed Pham on formal probation for five years with the condition that after three years, Pham could apply to have probation modified if there are no violations. The court ordered Pham to serve 268 days in county jail with credit for 134 actual days served and 134 conduct days. The court also ordered Pham to pay a restitution fine of $300 pursuant to section 1202.4, a probation revocation restitution fine of $300 pursuant to section 1202.44, a court operations fee of $40 pursuant to section 1465.8, and a criminal conviction assessment fee of $30 pursuant to Government Code section 70373, subdivision (a)(1). The court found Pham did not have the ability to pay the cost of the probation report or the cost of probation. The court also ordered Pham to provide DNA samples pursuant to section 296.

The trial court also required as conditions of probation the following: Pham submit to drug and narcotics testing as directed by her probation officer; submit her person and property, including any residence, premises, container, or vehicle under her control, to search and seizure at any time of the day or night by any law enforcement or a probation officer with or without a warrant, with or without probable cause or reasonable suspicion; not operate a motor vehicle with a measurable amount of alcohol in her blood;

5

submit to a chemical test of her blood, breath, or urine on demand of any peace officer or probation officer; cooperate with her probation officer's plan for psychiatric, psychological, alcohol and/or drug treatment or counseling; and to not have contact with the Temple. Pham agreed to all the probation terms and conditions.

The trial court did not impose a restitution condition citing the testimony of the Temple monks, who specifically indicated they did not want restitution. It indicated the motivation on the part of the Temple to waive restitution was rooted in their religious beliefs and the court would not override the victims' wishes. The court ordered count 2 dismissed. Pham timely appealed.

## DISCUSSION

Counsel raised four issues pursuant to *Anders.* We will address each issue anon.

*Sufficiency of the Evidence*

Section 594.3, subdivision (a), provides: "Any person who knowingly commits any act of vandalism to a church, synagogue, mosque, temple, building owned and occupied by a religious educational institution, or other place primarily used as a place of worship where religious services are regularly conducted or a cemetery is guilty of a crime punishable by imprisonment in a county jail for not exceeding one year or imprisonment pursuant to subdivision (h) of [s]ection 1170."

Here, Pham admitted throwing bottles at the Temple. Pham explained she had vandalized the Temple because someone who had ties to the Temple killed her family member. Sufficient evidence supports Pham knowingly committed an act of vandalism at the Temple.

*Pham's Statements*

It is well settled *Miranda* advisements are required only when a person is subjected to "custodial interrogation." (*Miranda*, *supra*, 384 U.S. at p. 444.) A custodial interrogation does not occur where an officer detains a suspect for investigation and the

6

questioning is limited to the purpose of identifying a suspect or "to obtain [sufficient] information confirming or dispelling the officer's suspicions. [Citation.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 180.) Whether a person is in custody is an objective test and the question is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400.) The totality of the circumstances is considered and includes "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.)

Here, Pham was not in the substation, she was not handcuffed, and she was not under arrest. Gonzalez and Nguyen were in plain clothes. After identifying themselves as police officers, the officers told Pham they were investigating a series of vandalisms. The officers told Pham that she was not under arrest, she did not have to speak with them, and she was free to leave. When the officers showed Pham the surveillance photographs, she responded by admitting she was the person throwing bottles at the Temple and that she was the person in the video. She then went on to explain why she had vandalized the Temple. Their conversation lasted no more than 10 minutes in a public parking lot. Based on these circumstances, there is no basis to conclude Pham was in custody for purposes of the *Miranda* advisements.

*Denial of Pham's Section 17, Subdivision (b)(5), Motion*

"The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed." (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).) However, there is a special category of crimes that is punishable as either a felony or a misdemeanor, depending on the severity of the facts surrounding its commission. (*People v. Superior Court (Perez)* (1995) 38 Cal.App.4th 347, 360, fn. 17.) These crimes, referred to as "wobblers," are

7

"punishable either by a term in state prison or by imprisonment in county jail and/or by a fine." (*Park*, *supra*, 56 Cal.4th at p. 789.) The trial court has discretion to "reduce a wobbler to a misdemeanor either by declaring the crime a misdemeanor at the time probation is granted or at a later time—for example, when the defendant has successfully completed probation." (*Id.* at p. 793.) The decision to reduce a felony to a misdemeanor is a sentencing decision made by the trial court. In the absence of a showing that a criminal sentencing decision was irrational or arbitrary, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on appellate review. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

The record demonstrates the trial court thoughtfully considered Pham's motion to reduce the vandalism offense to a misdemeanor. Although the court denied the motion, it indicated it would reconsider a request to reduce the matter to a misdemeanor if Pham successfully completed three years of probation. We find no abuse of discretion.

*Probation Terms*

In *People v. Welch* (1993) 5 Cal.4th 228, 237, our Supreme Court held a criminal defendant's failure to challenge the "reasonableness" of a probation condition proposed at the probation and sentencing hearing constitutes a waiver of the claim on appeal. The court explained that a timely objection allows the trial court to modify or delete an allegedly unreasonable condition or to explain why it is required in the particular case and a rule foreclosing appellate review of contentions not timely raised helps discourage the imposition of invalid probation conditions and reduce costly appeals. (*Id.* at p. 235.) Pham did not object at the sentencing hearing to any of the terms and conditions imposed by the trial court. In fact, she indicated she would accept the terms and conditions. Accordingly, she has forfeited this claim.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


FYBEL, J.

9