Filed 5/20/16  P. v. Brian CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>  v.<br><br>ROBERT LEE BRIAN,<br><br>         Defendant and Appellant. | C076538<br><br>(Super. Ct. No. 13F06515) |

Defendant Robert Lee Brian was convicted of assault, making a criminal threat, and several animal abuse charges.  On appeal, defendant contends the trial court improperly denied his motion to sever the trial for the assault and threat charges from the animal abuse charges.  He also claims the trial court should have granted his *Romero*[1] motion to dismiss his prior serious conviction, and that the court abused its discretion in sentencing him to the maximum term.  Finally, he claims the trial court should have granted him a new trial, even though he failed to make such a motion.  We affirm.

---

[1]  *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

# I. BACKGROUND

In October 2013, 57-year-old Phyllis Robinson had been living in defendant's converted garage for about one month, while defendant lived in the house. Robinson and defendant had a strained relationship, as defendant regularly had complaints about Robinson and did not want her living there.

Defendant had a dog that he kept at the house, and late one night Robinson heard loud smacking and punching noises, and then a dog yelping. She yelled at defendant to stop, but the noises and yelping continued. She screamed again for defendant to stop, and the noises stopped. Although Robinson never saw defendant hit his dog, within a few days of moving in, Robinson noticed the dog was very lethargic, with a swollen head and neck covered in "blotches."

On October 7, 2013, a couple days after hearing the yelping dog and punching sounds, Robinson noticed spiders on the coffee table and couch, which she used as her bed. Robinson started hitting the spiders with a magazine. Defendant came into the garage and yelled at Robinson, saying she "was making noise." Defendant grabbed a nearby wooden baby/dog gate and hit Robinson with it repeatedly. He aimed at her head, but she blocked the blows with her arm and shoulder. He continued to yell at her and threatened to kill her. A scared Robinson was able to escape, but defendant continued saying he was going to kill her.

After fleeing the garage, Robinson went to a nearby convenience store and called 9-1-1. She told dispatchers that defendant had attacked her, explained her arm may be broken, and described defendant's threats, saying defendant was "a sociopath" who "beats the dog too." Police noticed that Robinson couldn't move her right arm. An ambulance was called to take Robinson to the hospital, where she was treated for her injuries. The police arrested defendant.

Between February 2013 and the October 2013 attack on Robinson, multiple individuals observed defendant beating dogs.

2

Angelita Bohannon was in a romantic relationship with defendant from March 2013 to September 2013, and saw defendant's two dogs, Moose and Bubba.[2]  Bohannon never saw defendant abuse his dogs, but the last two times she saw Moose, in April 2013, he had a large wound on the top of his head which appeared infected.  In September 2013, Bohannon also noticed a large wound on Bubba's head and a swollen gouge on his neck.  In October 2013, Bubba was injured with a swollen face, appeared very weak, and looked "comatose."

In February 2013, Patric Ontivero was living in defendant's garage.  One night, he heard punching sounds followed by a dog yelping, at least 25 times over a period of five minutes.  Ontivero later noticed an infected scrape on Moose's head.

In September 2013, defendant's neighbor, William Dunnington, woke up when he heard a dog struggling and yelping.  He ran outside and saw defendant repeatedly yanking a dog off the ground using the dog's choke collar and leash hung over a metal pole like a pulley, and then kicking the dog "really hard."  Dunnington called the police and animal control.

In October 2013, Tina Echols observed defendant grabbing a dog and dragging it down the street while jerking the dog's collar.  The dog's face was covered with abrasions and cuts, as though the skin was burned.  Echols also called animal control.

On October 7, 2013, the same day defendant was arrested for assaulting Robinson, animal control went to defendant's home to check on a dog after receiving a complaint of abuse.  There was no response at the door, so officers returned the next day and asked a man who identified himself as "Joey" to get the dog.  Joey brought out an injured Bubba, who had a swollen head, wounds on his face, head, and neck, and missing fur on the side of his face.  The officers seized the dog and took it to an animal shelter for medical

[2] Bubba is referred to elsewhere in the record as Dude.  For clarity, we will refer to the dog as Bubba.

treatment. A medical exam revealed the dog had severe swelling to the front of its head, a fractured frontal bone, injuries to his jawbone, and a cataract in his right eye, resulting from trauma, which led to loss of vision in that eye. The two veterinarians who reviewed Bubba's radiographs testified that the injuries were consistent with being struck by something heavy and hard, possibly a hammer, golf club, brass knuckles, or a baseball bat.

On October 18, 2013, animal control returned to defendant's home after Robinson discovered dog remains in the backyard. Animal control found two sets of dog remains, including Moose. Moose suffered hip and neck injuries, as well as facial, femoral and foot fractures, which were likely caused by a hard instrument. There was a choke collar embedded in Moose's neck that was small enough to constrict the windpipe and prevent the dog from breathing or swallowing.

Defendant was charged by amended information with making a criminal threat (count one—Pen. Code, § 422),[3] assault with a deadly weapon (count two—§ 245, subd. (a)(1)), torturing an animal (count three—§ 597, subd. (a)), and two counts of animal abuse (counts four and five—§ 597, subd. (b)). The complaint also alleged defendant had a prior conviction for making a criminal threat and a prior strike. (§§ 667, subd. (a), 667, subds. (b)-(i), & 1170.12.) The court granted defendant's request to bifurcate the strike.

Defendant moved to sever the assault and threat counts from the animal abuse and torture counts. The court denied his motion, finding the evidence was cross-admissible.

A jury found defendant guilty of counts one, three, four, and five. The jury found defendant not guilty on count two, but guilty of simple assault. (§ 240.)

The court denied defendant's *Romero* motion to dismiss his prior conviction, which he admitted. (*Romero, supra*, 13 Cal.4th. 497.) The court reasoned the prior strike

---

[3] Undesignated statutory references are to the Penal Code.

4

involved threatening people with violence, and the current offenses were also violent offenses. The court also noted defendant had violent incidents between the prior strike and the current offenses. The court sentenced defendant to 15 years six months: one year four months each for counts one, four, and five; six months for count two; six years for count three; and five years for the prior strike.

After judgment was entered, defendant moved for substitution of attorney and for reconsideration of his sentence. The court denied his motion for lack of jurisdiction and chose not to recall the sentence.

## II. DISCUSSION

### A.  *Motion to Sever*

Defendant contends the trial court abused its discretion in denying his motion to sever the animal abuse and cruelty charges from the criminal threat and assault charges. We disagree.

Because it promotes judicial economy, the law favors consolidation of charges. (*People v. Scott* (2015) 61 Cal.4th 363, 395 (*Scott*).)  However, even if all of the statutory requirements for joinder are satisfied pursuant to section 954, " 'a trial court has discretion to order that properly joined charges be tried separately.' " (*Scott, supra,* at p. 395.)  We review a ruling on a defendant's motion to sever charges for abuse of discretion, considering the record before the trial court when it made its ruling. (*People v. Soper* (2009) 45 Cal.4th 759, 773-774 (*Soper*).)  A defendant must make a clear showing of prejudice, and the ruling amounts to abuse of discretion only if it falls outside the bounds of reason. (*Id.* at p. 774.)

To determine whether a trial court abused its discretion, a reviewing court first considers whether the evidence is cross-admissible in hypothetical separate trials. (*Soper, supra*, 45 Cal.4th at p. 774.)  Cross-admissibility is "normally sufficient" to dispel any suggestion of an abuse of discretion when denying a motion to sever. (*Id.* at p. 775.)  If the evidence is not cross-admissible, a reviewing court must then consider:

5

(1) whether some charges are particularly likely to inflame a jury against defendant; (2) whether a weak case has been joined with a strong case or another weak case so the totality of the evidence may alter the outcome as to some or all of the charges; and (3) whether one of the charges is a capital offense. (*Id.* at p. 775.) "We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*Ibid.*) Even if a trial court's ruling on a motion to sever is correct, reversal still may be warranted if the ruling resulted in gross unfairness amounting to a denial of due process. (*Scott, supra*, 61 Cal.4th at p. 396.)

Here, the trial court properly determined the evidence here was cross-admissible. The day before the assault, Robinson had heard defendant beating his dog. When Robinson called 9-1-1 to report the assault and threat, she described defendant as "a sociopath" who "beats the dog too." We agree with the trial court that the animal abuse evidence would be relevant to whether Robison reasonably feared defendant, and was therefore admissible as to the criminal threat charge. (Evid. Code, § 1101; § 422, subd. (a) [a threat of bodily injury or death is criminal if it causes the victim "reasonably to be in sustained fear for his or her own safety"].)

Moreover, no other circumstance of potential prejudice outweighs the benefits to the state from a joint trial. Despite defendant's contentions, it is not clear the evidence supporting the criminal threat and assault charges was significantly weaker than the evidence supporting the animal abuse charges. There was evidence in support of all of the charges. Also, even if the evidence of the assault and threat were weaker than the evidence of animal abuse, a "mere imbalance in the evidence" does not warrant "severance of properly joined charges." (*Soper, supra*, 45 Cal.4th at p. 781.) Nor do we find evidence of animal abuse was necessarily more likely to inflame the jury, compared with threatening and assaulting a 57-year-old woman with a wooden gate—especially since defendant was convicted only of simple assault. And none of the charges involved are capital offenses.

In addition, there is no evidence defendant suffered gross unfairness amounting to a denial of due process. The jury was properly instructed on the elements of each count, the prosecution's burden of proof, and its responsibility to decide separately each count.

B.      *Romero Motion*

Defendant contends the trial court should have granted his motion to dismiss his prior conviction. (§ 1385; see also *Romero, supra*, 13 Cal.4th 497.) He argues his conviction was remote and the offenses against Robinson were minimal in nature. We disagree.

Under section 1385, subdivision (a) the trial court has discretion to strike a prior felony conviction allegation if the dismissal is in furtherance of justice. (*Romero, supra*, 13 Cal.4th at p. 508.) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review a trial court's refusal to dismiss a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) A trial court abuses its discretion only when its decision is "so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) As long as the trial court "balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law," on appeal we will not disturb a trial court's decision. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

In considering defendant's motion to strike, the trial court considered that defendant's prior strike is a serious felony of threatening people with violence. In addition, the trial court noted defendant had other violent crimes between the strike at issue and the present crimes. We find no abuse of discretion.

7

*C.     Imposition of the Upper Sentence*

Without explaining why, defendant also contends the trial court abused its discretion in imposing the maximum sentence of 15 years six months. We disagree.

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) California's determinate sentencing law specifies three terms for most offenses, and the decision to impose an upper term rests within the broad discretion of the trial court. (*Id*. at pp. 836, 847.) The determinate sentencing law permits a trial court to base an upper term sentence upon "any aggravating circumstance that the court deems significant . . . [and] 'reasonably related to the decision being made.' " (*Id*. at p. 848, quoting Cal. Rules of Court, rule 4.408(a).) A single valid factor is enough to justify imposition of an aggravated term. (See, e.g., *People v. Forster* (1994) 29 Cal.App.4th 1746, 1759.) A trial court is "required to specify reasons for its sentencing decision, but will not be required to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*Sandoval, supra,* at pp. 846-847.)

Despite defendant's contentions that the trial court acted arbitrarily, the court provided a long list of aggravating factors supporting imposition of the upper term. The court reasoned defendant showed a high degree of cruelty and viciousness and callousness, he used weapons in the commission of his crimes, his victims were "particularly vulnerable," his crimes indicated planning, and he took advantage of his position of trust with the victims. (Cal. Rules of Court, rule 4.421(a)(1), (2), (3), (8), & (11).) In addition, the court found defendant "present[ed] a serious danger to society," had numerous convictions as an adult of increasing seriousness, and had served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(1), (2), & (3).) We find no error in the trial court's exercise of its discretion to impose the upper term.

*D.     Request for a New Trial*

Defendant argues the trial court should have granted him a new trial. We find no evidence in the record that defendant requested a new trial prior to judgment. (§ 1182;

8

see also *People v. Hales* (1966) 244 Cal.App.2d 507, 511 ["It is axiomatic . . . that a motion for new trial cannot be entertained or granted after judgment is entered"].) Defendant has forfeited this contention. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 332 [defendant forfeits issue for appeal when he fails to specify in trial court grounds relied upon in making a motion for a new trial].) The trial court could not err by failing to grant a motion that was never brought.

### III. DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.



We concur:



/S/

_____

ROBIE, Acting P. J.



/S/

_____

BUTZ, J.

9