Filed 2/7/22  P. v. Algarin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS ALGARIN,<br><br>Defendant and Appellant. | C093645<br><br>(Super. Ct. No. CRF1901439) |

Defendant Alexis Algarin appeals following his no contest plea to multiple counts of assault with a firearm and admission to one firearm use enhancement.  He argues the trial court erred in imposing the upper term for both the assault and enhancement, alleging the trial court impermissibly engaged in dual use of facts.

We disagree the trial court abused its discretion.  However, we agree with the parties that defendant is nevertheless entitled to remand in view of the passage of Senate Bill No. 567 (2021-2022 Reg. Sess.).  We further conclude the trial court failed to impose all mandatory fees.  Accordingly, we reverse the judgment for further proceedings consistent with this decision.  We otherwise affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with three counts of attempted murder, three counts of attempted murder by shooting from a vehicle, and assault with a firearm. It was alleged that defendant personally used and intentionally discharged a firearm with regard to the attempted murder counts and defendant personally used a firearm with regard to one count of assault with a firearm.

Defendant pled no contest to three counts of assault and admitted the associated firearm enhancement for one count in exchange for dismissal of the remaining counts. His agreed sentencing exposure was between nine and 16 years in state prison,[1] and he agreed to "waiving all rights to appeal his conviction or his sentence." The stipulated factual basis for his plea was the pretrial release report, which summarized the sheriff's department report concerning the incident.

According to this report, around 6:10 p.m., A. L. was riding in a car with his father and another individual when they noticed a car following them closely, and A. L. recognized one of the passengers of that car as defendant. A. L. knew defendant from his time in juvenile hall where A. L. had identified as a Sureño gang member, while defendant was a Norteño. Defendant was known to carry a gun and "had been 'looking' for [A. L.]" Defendant fired five to seven rounds at the car carrying A. L. No one was hit, but two of the rounds flew through the rear window. One caused glass to hit A. L. and another lodged itself into the car's roof's padding. Following the shooting, the car carrying defendant immediately fled the scene. A. L. returned home and alerted authorities.

The probation department's presentence report detailed defendant's juvenile criminal history, which started in 2012 when he was counseled and released after he

---

[1] This was consistent with the parties' stipulation that Penal Code section 654 did not apply in light of defendant's firing at least three separate shots into the vehicle.

2

threatened a student with a knife on the school bus. The student was scratched in the process. Next in 2015, defendant was counseled and released after he threw a rock at a car belonging to a staff member at a high school. Defendant said the staff member had embarrassed him in front of the class. The rock caused damage to the driver's door for which defendant paid $662 in restitution. Then in 2016, defendant twice burglarized residences for which he completed a juvenile offender work program.

In 2017, defendant received deferred entry of judgment after he was found with other individuals in an SUV where there was a concealed, loaded shotgun and a concealed, loaded pistol. Authorities had been on the lookout for that SUV after observing a social media video of individuals, including defendant, flashing gang signs wherein one of them wielded the shotgun.

Again in 2017, defendant was apprehended following a traffic stop in which a loaded handgun was recovered. Authorities were on the lookout for the driver of that vehicle after defendant posted a video on social media. The video showed defendant flashing gang signs with a gun in his waistband. As a result, defendant was adjudged a ward of the court and ordered to participate in the Maxine Singer Youth Guidance Center program for one year. After being ordered to the program, defendant participated in a group assault in the dayroom, where defendant attempted to obscure a surveillance camera. The juveniles ignored staff commands to stop and pepper spray had to be deployed to stop the assault. Defendant resolved the petition by admitting to participating in a criminal street gang and his wardship was continued. Defendant's wardship terminated in March 2019 when defendant was approximately 18 and one-half years old. The instant offense happened approximately five months later.

The probation officer recommended the upper term of 16 years in prison, citing aggravating factors from California Rules of Court,[2] rules 4.421(a) and 4.421(b)(1), (2), (5), and identifying no factors in mitigation. Specifically, the officer thought defendant's behavior in targeting A. L. was particularly callous thereby justifying an aggravated term. Defendant fired a gun from a moving car a minimum of five times, hitting A. L.'s moving car at least twice. Defendant was motivated by gang ties to harm A. L. without regard for the safety of the others. Moreover, defendant's history of violent and antisocial conduct, including his gang membership, demonstrated his danger to the community.

Defendant opposed this recommendation, arguing in pertinent part that the use of rule 4.421(a) would be inappropriate because a finding that the offense involved great violence merely restated the gravamen of the offense, thus constituting an impermissible dual use of facts. Defendant further argued that the record did not support a finding that defendant had engaged in a pattern of violent conduct showing a danger to society under rule 4.421(b)(1).[3] Defendant instead requested the court impose the midterm. The People's sentencing memorandum agreed with the probation recommendation and expanded upon its justifications for recommending imposition of the upper term. Specifically, it detailed defendant's prior conduct that demonstrated an increasing tendency toward violence,[4] as well as involvement in gangs.

---

**2**      Further rule references are to the California Rules of Court.

**3**      Defendant reiterated this objection at sentencing, arguing that aggravation based upon the crime "involv[ing] great violence, great bodily injury" would be an impermissible dual use of facts.

**4**      Consistent with the probation department's description of his juvenile criminal history, this included defendant's troubling behavior toward another student on a bus in 2012 that involved threatening that student with a knife, placing the knife on that student's face, and then cutting the student's finger. Defendant then vandalized a car at

4

On February 1, 2021, the trial court sentenced defendant to 16 years in state prison, comprised of the upper term of four years for assault , plus the upper term of 10 years for the firearm enhancement, plus consecutive one-year terms for two other assault counts.  In justification of the imposition of the upper term, the court stated:  "[Defense counsel] is asking that I not make a finding pursuant to 4.421(a).  I'll make a finding pursuant to 4.421(b), that he engaged in violent conduct that indicates a serious danger to society.  His prior sustained petitions in juvenile court are numerous and of increasing seriousness.  His prior performance under juvenile supervision is wholly unsatisfactory.  There are no circumstances in mitigation."  Defendant was also ordered to pay $2,800.55 in restitution, a $1,200 restitution fine, a $1,200 suspended parole revocation restitution fine, a $30 conviction assessment fee, and a $40 court operations assessment fee.  Defendant timely appealed and did not request a certificate of probable cause.

DISCUSSION

I

*Imposition Of The Aggravated Terms*

Defendant complains the trial court abused its discretion in imposing the aggravated terms for the assault and the associated gun enhancement.  Specifically, he argues the trial court engaged in dual use of facts because the court found defendant's violent conduct posed a danger to society and the only violent conduct in the record that could have posed such a danger was the instant assault and gun enhancement.  Defendant also complains the record does not support the other factors underlying the court's selection of the aggravated terms.  We disagree.

---

school in 2013, burglarized two residences in 2015, and then twice in 2017 was found in cars with other gang members where police recovered loaded firearms.  Finally, while in juvenile hall, defendant assisted in the coordinated assault of other juveniles by attempting to cover a surveillance camera.

5

At the time of defendant's sentencing, section 1170, subdivision (b) provided, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms . . . [t]he court shall select the term which, in the court's discretion, best serves the interests of justice." (Former § 1170, subd. (b); see also former § 1170.1, subd. (d).)

The trial court's sentencing decision is reviewed for abuse of discretion, meaning its discretion must have been exercised in a manner that is not arbitrary and capricious. (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1063.) " '[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions.' " (*Ibid*.) "[T]he presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." (*People v. Black* (2007) 41 Cal.4th 799, 815; see *People v. Forster* (1994) 29 Cal.App.4th 1746, 1759 [finding upper term justified if "there remains one unassailable valid factor in aggravation"].) "The trial court is not required to set forth its reasons for rejecting a mitigating factor. [Citations.] Further, unless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, including any mitigating factors." (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317-1318.)

Nevertheless, courts "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence." (*People v. Scott* (1994) 9 Cal.4th 331, 350; see § 1170, subd. (b); Rule 4.420(c), (d).)

As defendant must concede, neither assault with a deadly weapon nor the gun use enhancement has "violent conduct that indicates a danger to society" as an element. (See CALCRIM Nos. 875, 3146.) Defendant nonetheless argues that nothing in defendant's history other than his current conviction shows he has engaged in violent conduct that is a danger to society, and, on that basis, defendant argues the trial court impermissibly engaged in dual use, requiring reversal for resentencing.

6

Taking the second issue first, we disagree that *any* consideration of the assault by drive-by shooting in evaluating defendant's danger to society was impermissible use of dual facts. Rather, defendant's conduct in this case was particularly egregious and much more than was required to establish assault with a deadly weapon with a simple gun use enhancement. Defendant was looking for a rival gang member, followed him in a car, and then shot at the car carrying that gang member five to seven times endangering not only the gang member, but also the other car occupants and the general public at large.

Further, defendant complains his sustained juvenile petitions preceding this case do not show that he poses a danger to society and that they are neither numerous, nor increasing in severity. He posits that only his last three documented petitions with the juvenile justice system could have been considered by the trial court because only these petitions were "sustained."[5] He reasons none of those petitions shows that he is a danger to society, nor were they increasing in severity. We disagree.

It is not clear to this court that defendant's numerous petitions wherein he received a disposition of counseling, paid restitution, and participated in the juvenile work program could not be considered "sustained" by the trial court in evaluating his criminal history, including whether it was escalating in severity. (See, e.g., *People v. Nguyen* (2009) 46 Cal.4th 1007, 1012 [a constitutionally valid prior juvenile adjudication may be used to enhance adult sentence].) Clearly, if those incidents are taken into account, defendant had numerous interactions with authorities showing a willingness to commit violence, moving from small knives, to rocks, to guns.

---

**5** Defendant's characterization of the People's sentencing statement as being "a list of incidents that allegedly occurred in juvenile hall that did not result in a sustained petition" is mistaken. As recited at length herein, defendant's interactions with the juvenile justice system leading up to his agreed-upon deferred entry of judgment do not show juvenile hall incidents.

However, we need not decide this issue because even without defendant's juvenile adjudications from 2012 to 2015, his petitions that resulted in deferred entry of judgment and wardship proceedings show that he was repeatedly found in the presence of loaded guns concealed in vehicles. Defendant flashed gang signs and had been identified as an active member of the Norteño gang. He further participated in an assault after being sentenced to one year in a juvenile correctional program. Defendant attempts to downplay this latter incident as a "fistfight," ignoring that it was a multi-person orchestrated attack occurring within a juvenile rehabilitation facility and that the juveniles involved refused to stop until they were incapacitated with pepper spray. Then, mere months after being released from wardship, defendant was looking for A. L., a rival gang member, and shot at the car A. L. was riding in five to seven times from the car that defendant was riding in.

Accordingly, it is clear the trial court did not abuse its discretion in selecting the aggravated terms in this case under the rules in effect at the time of sentencing. (*People v. Weber*, *supra*, 217 Cal.App.4th at p. 1063.) Rather, the record supports that defendant had engaged in violent conduct that endangered society and had suffered multiple sustained petitions, which were increasing in severity. (Rule 4.421(b)(1), (2).) It is also clear that the trial court did not abuse its discretion in determining that defendant's prior performance on probation had been unsatisfactory. (Rule 4.421(b)(1), (2).) Any one of these factors is sufficient to support imposition of the aggravated terms. (*People v. Black*, *supra*, 41 Cal.4th at p. 815; *People v. Forster*, *supra*, 29 Cal.App.4th at p. 1759.) Accordingly, defendant's claim that the trial court abused its discretion fails.

However, this does not end our inquiry. Following the close of briefing, but before an opinion was issued in this case, the Legislature passed Senate Bill No. 567 (2021-2022 Reg. Sess.), which alters the methodology employed when the court is selecting a triad term under Penal Code sections 1170 and 1170.1, creating a presumption in favor of the middle term except as provided. (Stats. 2021, ch. 731, §§ 1.3, 2.) We

8

asked the parties to brief the applicability of this provision, which is effective January 1, 2022 (Cal. Const., art. IV, § 8, subd. (c)), and the parties have agreed it should be applied retroactively to defendant's nonfinal judgment. We concur that Senate Bill No. 567 should be applied retroactively to this case and will reverse defendant's sentence and remand for resentencing so that the court may exercise its discretion in accordance with the new, more favorable rules for selecting the appropriate triad term under amended Penal Code sections 1170 and 1170.1. (See, e.g., *People v. Stamps* (2020) 9 Cal.5th 685, 699 ["Eliminating the prior restriction on the court's ability to strike a serious felony enhancement in the furtherance of justice constitutes an ameliorative change within the meaning of *Estrada*"].)

Moreover, we disagree with the People that the district attorney should be afforded the opportunity to withdraw from the plea agreement on remand. The agreement between the parties remains an open plea to a sentence between nine and 16 years, to be selected at the court's discretion. The People have not shown that the Legislature's modification to the scope of that discretion entitles the district attorney to withdraw from the plea deal on remand. On the contrary, the *Stamps* decision itself recognized that a defendant subject to an open plea deal would be entitled to remand for the trial court to reconsider its sentence in light of the discretion newly afforded by Senate Bill No. 1393. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 700.) We discern no meaningful difference here and further recognize that the district attorney should be afforded the opportunity to argue through briefing and possible presentation of evidence that defendant should still be sentenced to the upper term in this case. Nothing in this opinion prevents the district attorney from attempting to make this showing on remand.

II

*Fines And Fees*

At sentencing, the trial court ordered defendant pay $2,800.55 in restitution, a $1,200 restitution fine, a $1,200 suspended revocation restitution fine, a $30 conviction

9

assessment fee, and a $40 court operations assessment fee. However, because defendant pled no contest to three counts, the trial court was required to impose the $40 court security fee (Pen. Code, § 1465.8) and the $30 court operations assessment fee (Gov. Code, § 70373) three times (see *People v. Castillo* (2010) 182 Cal.App.4th 1410, 1415, fn. 3 [Gov. Code, § 70373]; *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865-866 [Pen. Code, §1465.8]). Because we must remand the matter for resentencing, we can and will direct the trial court to correct this omission at resentencing.

## DISPOSITION

The judgment is reversed and the matter remanded for resentencing consistent with the changes brought about by Senate Bill No. 567 and related legislation.[6] The trial court is also directed to impose three $40 court security fees (Pen. Code, § 1465.8) and three $30 court operations assessment fees (Gov. Code, § 70373) at the resentencing hearing. The judgment is otherwise affirmed.

/s/_____
Robie, J.

We concur:

/s/_____
Blease, Acting P. J.

/s/_____
Mauro, J.

---

[6] Senate Bill No. 567 (2021-2022 Reg. Sess.), Assembly Bill No. 124 (2021-2022 Reg. Sess.), and Assembly Bill No. 1540 (2021-2022 Reg. Sess.) were all signed by the Governor on October 8, 2021, and modified certain provisions related to sentencing. Because the application of Senate Bill No. 567 to this case requires remand, we need not address the possible applicability of the other provisions.